UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
UNITED STATES OF AMERICA,

-against-

MEMORANDUM & ORDER
18-CR-0496-1(JS)

RAYMOND R. PELLEGRINO,

Defendant.
----------------------------------X

APPEARANCES

For United States: Charles P. Kelly, Esq.
Madeline M. O'Connor, Esq.
United States Attorney's Office
Eastern District of New York
610 Federal Plaza
Central Islip, New York 11722

For Defendant: John F. Kaley, Esq.
Doar Rieck Kaley & Mack
217 Broadway, Suite 707
New York, New York 10007

SEYBERT, District Judge:

Defendant Raymond R. Pellegrino ("Defendant") seeks a reduction of his sentence, pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i), in light of health concerns surrounding the COVID-19 pandemic, his underlying medical conditions, and Federal Correction Institute Otisville's ("FCI Otisville") pandemic response. (Def. Mot., D.E. 38; Def. Reply, D.E. 40.) The Government opposes the motion. (Gov't Opp., D.E. 39.) For the reasons set forth below, the motion is GRANTED.

BACKGROUND

I. Factual and Procedural History

Defendant was indicted on or around September 13, 2018 and arraigned on October 5, 2018 before then-District Judge Joseph F. Bianco. (Indictment, D.E. 1; Min. Entry, D.E. 5.) The Indictment charged Defendant, a chiropractor who owned his own practices, with one count of health care fraud arising out of a scheme to defraud an insurance company by using his employees' Taxpayer Identification Numbers to bill for services they did not render. (See generally Indictment.) On March 15, 2019, Defendant entered a guilty plea. (Min. Entry, D.E. 23.) For this offense, the sentencing guidelines provided a range of 37 to 46 months' imprisonment and probation recommended a term of 42 months' imprisonment. (Presentence Report ("PSR"), D.E. 26, ¶ 67; Probation Recommendation, D.E. 26-1, at 1-2.) On May 17, 2019, this case was reassigned to the undersigned. On October 18, 2019, this Court sentenced Defendant to 18 months' imprisonment, three years of supervised release, and payment of $2,427,101.13 in restitution. (Min. Entry, D.E. 32; Sent'g J., D.E. 33.)

Defendant voluntarily surrendered to FCI Otisville on December 20, 2019 and, as of the date of this Memorandum and Order, has served a little over 9 months of his sentence.[1] (Def. Mot. at

[1] Defendant was in custody from September 17, 2019 to October 5, 2019, the date of his arraignment. (Def. Mot. at 9-10.)

1, 10.) Defendant is eligible for release on or around March 12, 2021. (Def. Mot. at 10.) Defendant represents that on or about April 16, 2020, FCI Otisville case managers advised him, and other inmates, that they were closing the facility and Defendant, and others, would be transferred to FCI Otisville's medium security prison for a two-week quarantine prior to their release to home confinement. (Def. Mot. at 2.) Defendant completed the necessary forms and was approved for a May 1, 2020 release to home confinement at his parents' house in Bay Shore, New York. (Id.)

The Government submits Defendant's "Furlough Application Approval and Record," verified by "J. DeLeo," a corrections counselor. (Furlough App., Ex. A to Def. Mot., D.E. 39-1.) Under a heading titled "Approval" reads: "[a]pproval for the above named inmate to leave the Institution on a furlough as outlined is hereby granted in accordance with P.L. 93-209 and the [Bureau of Prisons ("BOP")] Furlough Program Statement. The Period of Furlough is from 5/1/2020 9:00AM to 5/31/2020 9:00AM." (Id.) The Furlough Application contains what appears to be electronic signatures from "CMC K. Walker" and "J. Petrucci, Warden," although not dated. (Id.) There is nothing provided in the space under the Warden's electronic signature for "Reason(s) for disproval." (Id.) At some point before May 1, 2020, Defendant was informed he would not be released to home confinement and on May 6, 2020, he returned to FCI Otisville where he remained until he tested positive for COVID-

19. Defendant was then transferred back to the medium security facility to quarantine. This motion followed on July 2, 2020.

On September 21, 2020, the Court directed the parties to submit a letter "indicating the reasons and/or circumstances as to why the Warden and/or the BOP rescinded its decision to grant Defendant furlough." (Sept. 21, 2020 Elec. Order.) The Government responds that the BOP/Warden never granted Defendant furlough and "all inmates who filed furlough applications were offered the opportunity to go in quarantine while their applications were processed so that, if their furlough application were granted, the furlough pre-condition of two weeks quarantine" would be satisfied. (Gov't Ltr., D.E. 41.) The Government did not submit records confirming the Warden's denial. According to the Government, however, Defendant chose to quarantine.

Defendant responds and recites the above-detailed timeline of events and specifies that on April 16, 2020, the FCI Otisville administrator informed the inmates that the facility was in the process of closing and all inmates "were being furloughed home to complete their sentences after a 14-day quarantine," and should arrange to be picked up on May 1, 2020. (Def. Ltr., D.E. 42.) Defendant maintains he had no choice regarding the 14-day quarantine. (Id.)

DISCUSSION

I. Legal Standard

"'A court may not modify a term of imprisonment once it has been imposed except pursuant to statute.'" United States v. Rabuffo, No. 16-CR-0148, 2020 WL 2523053, at *1 (E.D.N.Y. May 14, 2020) (quoting United States v. Gotti, No. 04-CR-0743, 2020 WL 497987, at *1 (S.D.N.Y. Apr. 6, 2020)). As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i) provides:

> The court may not modify a term of imprisonment once it has been imposed except that--in any case--the court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

A defendant seeking relief under Section 3582(c)(1)(A) "bears the burden of showing that his release is justified." United States v. Patterson, No. 06-CR-0080, 2020 WL 3451542, at *1 (S.D.N.Y. June 23, 2020); see also United States v. Fleming, No. 18-CR-0197, 2020 WL 2838511, at *2 (E.D.N.Y. June 1, 2020) ("It is [defendant's] burden to show that there are 'extraordinary and

compelling reasons' that warrant a modification of his sentence."); United States v. Schultz, No. 17-CR-1935, 2020 WL 2764193, at *2 (W.D.N.Y. May 28, 2020) (same).

II. Analysis

The parties dispute whether Defendant exhausted his administrative remedies. (Def. Mot. at 3-4; Gov't Opp. 10-15.) Defendant argues that the Furlough Application satisfies the exhaustion requirement. (Def. Mot. at 3.) The Government disagrees and argues that Defendant did not exhaust his remedies because the Furlough Application is distinct from a compassionate release request. (Gov't Opp. at 12-13; Furlough App.) In this case, the Court waives the exhaustion requirement in view of the time constraints involved and the allegations regarding FCI Otisville's furlough and compassionate release practices. See United States v. Cohen, No. 17-CR-0372, 2020 WL 3960513, at *2 (E.D.N.Y. July 13, 2020) (Seybert, J.) (collecting cases).

The Court turns to the merits. Defendant argues that the severe outbreak at FCI Otisville and his "now virus-infected physical condition, combined with his other ailments, presents extraordinary and compelling circumstances warranting a sentencing reduction." (Def. Mot. at 7-9.) The Government responds that "the risk of complications to defendant's COVID-19 virus cannot--and should not--alone form the basis to grant a prisoner's motion for release, particularly in a case such as this one where the

defendant has no heightened risk of complications and the defendant's risk factors cannot be described as 'extraordinary and compelling.'" (Gov't Opp. at 18.) On September 28, 2020, Defendant advised the Court of the Second Circuit's decision in United States v. Brooker, No. 19-3218, -- F.3d --, 2020 WL 5739712 (2d Cir. Sept. 25, 2020) that "wholly supports granting [ ] compassionate release (a sentence reduction) at this time." (Def. Sept. 28, 2020 Ltr., D.E. 43.) In support, Defendant cites to the COVID-19 outbreak at FCI Otisville, the facility's response, the resulting risks, Defendant's "excellent institutional record," and the fact that he contracted COVID-19. (Id.)

As other courts have noted, the historical "authority to define 'extraordinary and compelling reasons' has been granted to the United States Sentencing Commission, which has defined that term at [U.S. Sentencing Guidelines Manual ("U.S.S.G.")] § 1B1.13, comment n.1." United States v. Zukerman, 451 F. Supp. 3d 329, 335 (S.D.N.Y. 2020). However, the Second Circuit in Brooker recently analyzed "whether the First Step Act allows courts independently to determine what reasons, for purposes of compassionate release, are 'extraordinary and compelling,' or whether that power remains exclusively with the BOP Director" as stated in U.S.S.G. § 1B1.13 Application Note 1(D) ("Application Note 1(D)"). 2020 WL 5739712, at *1, 5. The Second Circuit agreed with the majority of other courts and held "despite Application Note 1(D), the First Step Act

freed district courts to exercise their discretion in determining what are extraordinary circumstances." Id. at *5. The Court explained that "[b]ecause Guideline § 1B1.13 is not 'applicable' to compassionate release motions brought by defendants [as compared to those brought by the BOP], Application Note 1(D) cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling." Id. at *6. Thus, "[t]he only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" Id. at *8 (quoting 28 U.S.C. § 994(t)) (emphasis and alterations in original).

This Court exercises its discretion and finds that Defendant established "extraordinary and compelling reasons" to modify his sentence. 18 U.S.C. § 3582(c)(1)(A)(i). Defendant's motion differs from many the Court has received because he has, unfortunately, contracted and recovered from COVID-19, despite an absence of documented underlying illnesses or conditions. Yet, the Court gives credence to Defendant's representations and is keenly aware that he contracted COVID-19 after (1) FCI Otisville allegedly informed its inmates it was closing and all inmates would be furloughed to home confinement, (2) FCI Otisville transferred Defendant to the medium security prison at Otisville for a mandatory 14-day quarantine, (3) Defendant filled out forms and

arguably received approval for furlough, and (4) FCI Otisville transferred Defendant back to FCI Otisville. The Government does not squarely dispute these representations but responds that "in April 2020, all inmates at Otisville Camp were evaluated for home confinement," Defendant chose to quarantine in the event the Warden granted furlough, and he was denied furlough. (Gov't Ltr.) While the government submitted the Furlough Application, it did not submit proof of the Warden's denial.

The Court acknowledges that the BOP faced, and continues to face, the herculean task of implementing measures to mitigate the spread of COVID-19 throughout the prison population. However, the Court cannot ignore Defendant's representations regarding FCI Otisville's unexplained change in its COVID-19-related furlough application process. As stated, Defendant's Furlough Application, submitted by the Government, appears electronically signed by the Warden and there is nothing in the space for "Reason(s) for disapproval." Nor is the Court persuaded that FCI Otisville is a safer alternative than home confinement for someone in "Defendant's position." (See Gov't Opp. at 17.) As recognized by my colleague, FCI Otisville experienced an "alarming" and "apparent outbreak." United States v. Efrosman, No. 06-CR-0095, 2020 WL 4504654, at *2 (E.D.N.Y. Aug. 5, 2020). To be sure, Defendant already contracted COVID-19 and as of September 29, 2020, the virus remains at-large: 2 inmates and 1 staff member are

listed as "positive" for COVID-19 at FVI Otisville and 24 inmates and 14 staff members are listed as "recovered" from the virus. See COVID-19 Cases, BOP, http://www.bop.gov/coronavirus/ (last visited Sept. 30, 2020). This is an increase from September 16, 2020, when the BOP reported 1 staff member as "positive" for COVID-19 and 27 inmates and 14 staff members as "recovered" from the virus.[2]

The Court declines to adopt the Warden's alleged basis for denying Defendant's furlough application: that Defendant "had no risk factors for serious illness should he contract COVID-19." (Gov't Ltr.) First, while the Government submitted the Furlough Application, it did not submit the Warden's denial. Second, under Brooker, the BOP does not "retain a significant rein" on the Court's discretion to determine whether "extraordinary and compelling" reasons justify Defendant's release where, as here, the BOP "made no motion." Brooker, 2020 WL 5739712, at *7.

Finally, the Court has considered the Section 3553(a) factors. See § 3582(c)(1)(A)(i); United States v. Harris, No. 15-CR-0445, 2020 WL 5801051, at *2 (S.D.N.Y. Sept. 29, 2020) (considering the Section 3553(a) factors and recognizing that under Brooker, "when assessing a motion brought directly by an

---

[2] The Court independently tracked the BOP website for FCI Otisville. Because it updates daily, these numbers are not stored or reflected on the website.

imprisoned person rather than by the BOP, the Court is constrained neither by U.S.S.G. 1B1.13's enumeration of extraordinary and compelling reasons, nor by its freestanding requirement that the defendant seeking release not pose any danger to the community."). The "severity of [Defendant's] conduct remains unchanged. What has changed, however, is the environment where [he] is serving his sentence." Zukerman, 451 F. Supp. 3d at 336 ("When the Court sentenced [Defendant], the Court did not intend for that sentence to 'include incurring a great and unforeseen risk of severe illness or death' brought on by a global pandemic." (quoting United States v. Rodriguez, No. 03-CR-0271, 451 F. Supp. 3d 392, 407 (E.D. Pa. Apr. 1, 2020))). Moreover, "the limited duration remaining on Defendant's sentence," serves "as an additional consideration favorable to granting [his] motion for compassionate release." United States v. Miller, No. 15-CR-0132, 2020 WL 3187348, at *5 (D. Conn. June 15, 2020).

Accordingly, the circumstances unique to this case demonstrate extraordinary and compelling reasons justifying a modification of Defendant's term of imprisonment.

## CONCLUSION

For the reasons stated above, Defendant's motion for a reduction of his sentence, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (D.E. 38) is GRANTED. It is hereby ORDERED that Defendant's sentence is modified such that his remaining term of imprisonment

is replaced by an equal period of home confinement, with electronic monitoring and on such conditions as the Probation Department deems necessary, to be followed by the term of supervised release previously imposed by the Court. It is further ORDERED that Defendant be released immediately to begin his term of home confinement. Defendant shall remain self-quarantined for 14 days after release. Within one week of his release, Defendant shall call Probation to schedule an appointment.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: September 30 , 2020
Central Islip, New York